

FILED & ENTERED

APR 14 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re:

Shirley Foose McClure

Debtor.

Case No.: 1:13-bk-10386-GM

CHAPTER 11

**MEMORANDUM DENYING BARRETT S. LITT'S EMERGENCY MOTION FOR A STAY PENDING APPEAL OF THE COURT'S APRIL 2, 2015 ORDER ON MOTION TO USE PROCEEDS**

Date:       April 14, 2015
Time:       10:00 a.m.
Courtroom:  303
            21041 Burbank Blvd.
            Woodland Hills, CA

    Barrett S. Litt, individually and as a member of various law firms (referred to jointly as "Litt"), represented Shirley McClure throughout the district court proceedings against the City of Long Beach, which yielded her a substantial judgment. Much of this money was invested in real properties in California, Hawaii, Indiana, and Michigan. He was also McClure's bankruptcy attorney in bankruptcy case 92-13717.

    Litt was paid about $9 million in attorney fees from the judgment proceeds, but -

-1-

based on the terms of the confirmed chapter 11 plan – he then sought an additional sum of approximately $1 million by way of motion in the bankruptcy case. This was granted by this Court and eventually affirmed by the Ninth Circuit Court of Appeals [12-56637]. After the initial judgment, Litt recorded abstracts of judgment, thereby creating a judgment lien on many of the properties that McClure had purchased.

On December 21, 2012, McClure filed a second chapter 11 case [originally filed in the Los Angeles division as case 2:12-bk-51709-VZ, but transferred to the San Fernando Valley division as case 1:13-bk-10386-GM].

On December 31, 2013, McClure filed a motion to use the proceeds of the sale of the Santa Monica property and to limit Litt's lien to certain properties [13-10386, dkt. 304].[1] Various hearings were held and on September 18, 2014, the Bankruptcy Court issued a partial decision ["the Memorandum of Partial Decision," dkt. 478] that it could modify the stay to allow security for the stay to be less than all of the Real Properties. To do so, Litt must remain protected against the risk of nonpayment. Thus the lien could be expunged from some of the real properties so long as the remaining properties adequately protected Litt's judgment claim. The Court also decided that the amount necessary to protect the judgment would be a net equity of 200% of the amount of the judgment.

On September 24, 2014, the Court entered its order authorizing the Debtor to use the proceeds of the sale of the Santa Monica property. [dkt. #484]. Litt appealed to the District Court, which allowed McClure to use a portion of the proceeds for certain specified items. [2:14-cv-07640-GW, dkt. 29]. This appeal is still pending, but has been

---

[1] Most motions, etc. were filed in both the original 1992 cases and the case filed in 2012 and now numbered as 13-10386 because the Litt judgment was in the 1992 case. Unless otherwise noted, for convenience the docket numbers refer to those in case 13-10386.

continued so that this Court can complete its work on the balance of the motion.

An evidentiary hearing was held on November 24, 2014 and on November 25 the Court entered its order establishing the fair market value of nine California properties that are subject to Litt's lien. The final piece – the determination of liens – was heard on March 10, 2015.

Based on the evidence presented and the findings set forth in the Memorandum of Opinion [dkt. #654], the Court ordered that there is sufficient equity available to protect Litt in the following three properties:

910 Corbett Avenue, block 2799, lot 072 (unit #1), San Francisco, CA

910 Corbett Avenue, block 2799, lot 073 (unit #2), San Francisco, CA

910 Corbett Avenue, block 2799, lot 074 (unit #3), San Francisco, CA


The Court expunged the liens from the following properties: [2]

316 Rossmore, #307, Los Angeles, CA

2622 30th Street, Santa Monica, CA

12435 Benton, #3, Rancho Cucamonga, CA

12435 Benton #4, Rancho Cucamonga, CA

510 S. Hewitt, #102, Los Angeles, CA

510 Hewitt #110, Los Angeles, CA

218 N. Harrington, Fullerton, CA

1418 E. Riverside, Fullerton, CA

3401 W. Gregory Ave., Fullerton, CA

---

[2] At the hearing on this motion for stay pending appeal, the Court was advised that Litt does not have a lien on properties in Indiana or Hawaii, but that there is no need to change the expungement order to reflect that.

      13621 Dalmation Ave., La Mirada, CA

      93 Invitational Dr., Gaylord, MI

      145 N. Otsego, Gaylord, MI

      345 E. Felshaw, Gaylord, MI

      43651 L. Honoapilani Rd., Royal Kahana #120, Lahaina, HI

      1430 HiLo Dr., Bluffton, IN

      Lot 13 Loon Lake Lot, Gaylord, MI

On April 3, 2015, Litt filed a Notice of Appeal and Statement of Election to the U.S. District Court. On April 8, 2015, Litt filed this emergency motion for a stay pending appeal. The Court set this on very short notice for the convenience of the Court since the "emergency" nature is not warranted because McClure cannot undertake any actions that directly affect title or liens without an order of the Court and no such motion is pending.

The motion seeks a stay on the ground that this is an issue of first impression and that Litt is likely to succeed on the merits of the appeal because there is no underlying law to support the judgment. Litt also asserts that he will be irreparably harmed if his judgment is removed from the properties and McClure is permitted to use the equity in the properties. According to Litt, this outweighs any risk of harm to McClure. He claims that the stay will not harm the public interest, but will only serve to protect the interests of other judgment creditors who find themselves "pulled into a bankruptcy case and forced to defend their interests."[3]

A stay pending appeal is initially presented to and determined by the bankruptcy

---

[3] Dkt. 663, 2:23-25. While it is correct that the final ruling by the Court of Appeals will affect other judgment lien creditors, it is disingenuous to even infer that Litt was "pulled into a bankruptcy case and forced to defend" his interest. Litt was the Debtor's attorney in the original chapter 11 bankruptcy case and his judgment arose due to the confirmed Plan of Reorganization in that case. He is not an unwilling participant in the bankruptcy system.

court. F.R.B.P. 8005. The Ninth Circuit has described the requirements for a stay

pending appeal as follows:

> There are four factors we consider when presented with a motion for a stay pending appeal:
>> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.
>
> *Golden Gate Restaurant v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)). We have recently explained that to satisfy steps (1) and (2), we will accept proof either that the applicant has shown "a *strong* likelihood of success on the merits [and] . . . a *possibility* of irreparable injury to the [applicant]," or "that *serious* legal questions are raised and that the balance of hardships tips *sharply* in its favor." *Id.* at 1115-16 (emphasis added; citations omitted). We have described these alternative formulations as "'two interrelated legal tests' that 'represent the outer reaches of a single continuum.'" *Id.* at 1115 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)).

Stormans Inc. v. Selecky, 526 F.3d 406, 408 (9th Cir. 2008) (emphasis in the original)

Factors #1 and #2:

Litt argues both types of proof: "a *strong* likelihood of success on the merits and a *possibility* that he will suffer irreparable harm" and "that *serious* legal questions are raised and that the balance of hardships tips *sharply* in his favor." However, he fails under either scenario. While there may be a likelihood of success on the merits, it is not *strong*. Litt relies mainly on the fact that this is a case of first impression which, of course, does not mean that the decision by this Court is incorrect. He notes that neither California nor Federal law specifically allows removal of a judgment lien from properties when the judgment creditor is hugely oversecured. He states that the Court is creating a new procedure – and this is true. But just because no prior procedure exists is not an indication that one side or the other will prevail. Of course, it is clearer if the Court

merely seeks to enforce existing law. But statutes are often interpreted in light of the facts and equities existing in a given scenario.

Litt is correct that there is no specific provision under California law that looks at removing a judgment lien when the judgment creditor is vastly oversecured, but there is also no statute or case law that prohibits it. There is a *lacuna* in the law and this case falls into that open area. In crafting a solution to deal with this gap, it is likely that the appellate court will look to the equities of the situation and these favor the Debtor.

On one side of the scale is Ms. McClure, who needs flexibility to try to reorganize in a timely fashion – she only has until September to propose a Plan. On the other side you have Mr. Litt, with so much protection that only if he lets some go can any sort of balance be obtained. And even when some of it is removed and he only holds on to the three San Francisco properties and their 200% judgment-to-value ratio, the scale still tips in his favor.

So while this Court cannot be positive that the decision will be upheld on appeal, a certainty of affirmation is not the test. The burden is on Litt to show that he is a good deal more likely than not to prevail and he has not done so for the reasons stated above and in the Memorandum of Decision (dkt. 654).

As to the *possibility* that Litt will be irreparably injured by removal of the liens, the Court cannot guarantee that Litt will not suffer an irreparable injury, but that *possibility* is so remote as to be practically non-existent. First of all, Litt retains his lien on three rental properties in the high priced market of San Francisco (one of the highest priced markets for renters in the country). Even during the last year or so, these three units have substantially increased in value as shown by the appraisals (to which Litt put on no

contravening evidence). The first trust deeds have a low debt-to-value ratio. The total equity for Litt is twice the amount of his judgment lien and, due to the very low interest rate on the judgment, the equity appears to be growing at a faster rate than the amount of the judgment.

With proper insurance, which can be agreed to by stipulation if it is not already required, Litt has about the same possibility of suffering injury as he has of being struck by lightning. While it is "possible," the test must mean that the likelihood is not just slightly above a zero chance, but something somewhat more substantial than that.[4]

At the hearing Litt argued that once his lien is removed, he faces the real fear that all, most, many, or some of the remaining properties will be lost to him forever, even if he eventually prevails on appeal. It is highly likely that one or more of the remaining properties will be sold or refinanced, but this cannot be done without notice since any such action will require an order of this Court. Litt will know well in advance and while he agrees that he will oppose each sale (or refinance if it increases the senior lien amount), he is aware that this is merely a strategic act on his part.

Even over the maximum expected length of the appeal, it is unreasonable to believe that McClure will sell all of the other properties. Although McClure may seek to sell some of them, the existence of the tax issue prevents her from a wholesale blow-out of the properties. Similarly, there is no evidence that McClure would be able to do a wholesale refinance. Should Litt prevail on the appeal, even if the San Francisco properties do not fully satisfy him, there likely will still be additional properties to which his lien can reattach. But even if not, the San Francisco properties are sufficient to

---

[4] Since Litt has not raised the issue of insurance, the Court assumes that it is being provided either by a prior order, the rules of the United States Trustee, or stipulation.

basically guarantee him a full return on his judgment.

Looking at the alternative test for #1 and #2, there are serious legal questions raised. But the balance of hardships does not tip sharply in Litt's favor. In fact, it tips much more in McClure's favor.

Litt argues that there will be no harm to McClure if there is a stay and she cannot obtain the equity in any of these properties. This is clearly wrong. Except for her house and some land in Michigan, these are all rental properties.[5] In most cases the rent will cover her taxes, payments to the senior lienholders, her 10% management fee, and (hopefully) minor repairs. But there will be times when a property is between tenants (no rent being received) and/or needs major repairs (such as a new roof).

Litt notes that McClure can (and must) seek court approval to sell or refinance any of these properties and that the Court can review the situation at that time. Thus, a stay can be granted with no negative impact on McClure because it can always be modified. While it is true that McClure will need court approval, there is a very big difference between dealing with the objection of a lienholder as opposed to one who has no lien on that particular property. Thus, when McClure first sought to use sale proceeds from the sale of the Santa Monica property, the Court limited it to items that would benefit Litt's other security (paying the senior liens, taxes, repairs, etc. for properties on which Litt had a lien). Any other use was hard-fought and these are time-consuming and expensive legal battles, which McClure cannot afford in terms of duration or money.

While Litt admits that McClure might be able to remove his liens through a Plan

---

[5] No one has argued that the property in Indiana or Hawaii has sufficient equity to be particularly beneficial to McClure.

-8-

of Reorganization in that the San Francisco properties may qualify as the "indubitable equivalent" to his claim, he also notes that McClure must deal with difficult tax issues that make confirmation much more difficult.[6]  Litt argues that he will be harmed if McClure is not able to file and confirm a plan since this would likely lead to conversion of the chapter 11 case to chapter 7, appointment of a trustee, or dismissal after his liens are removed.[7]  But it is his lien on almost all assets of the Debtor that has a large part in causing the delays in confirming a plan.

He also states that McClure can seek to refinance a property for an amount in excess of the current first trust deed – contingent on removal of Litt's lien – and then bring that to the Court.  Although no specific evidence was presented on either side of this suggestion, the Court is aware from its 30+ years of experience, that even if there are lenders out there who are willing to deal with McClure in this way, they are certainly not the mainstream ones and they would require a meaningful amount of points or a higher rate of interest – both of which would probably kill the deal or at least substantially hurt McClure.

The Litt liens are causing a roadblock to what Litt, himself, urges McClure to do. To some extent this is like the old definition of *chutzpah,* that a man who killed his parents then threw himself on the mercy of the court on the grounds that he was an orphan.  Litt wants to keep his liens covering all of McClure's assets to protect himself from the very thing that his liens will bring about.

So while Litt faces a *de minimis* chance of not having sufficient equity in the three San Francisco properties to fully pay his judgment (which is growing at less than 1% per

---

[6] 11 USC §1129(b)(2)(A)(iii) defines one of the ways that a Plan can be confirmed over the objection of a secured creditor.  It is also possible that the Debtor might use 11 USC §1129(b)(2)(A)(i).
[7] Litt is specifically concerned about conversion since a Trustee may seek to remove his liens.

-9-

year), McClure faces the very real possibility of losing many of the benefits of her judgment against the wrongful taking by the City of Long Beach, which is what Litt (as her attorney) worked to give her.

To the extent that issues #1 and #2 fall on a continuum, the Court finds that things favor McClure rather than Litt. Although the arrow moves partway to Litt as to the seriousness of the legal issues and the uncertainty of the final outcome, it is substantially on McClure's side as to who will suffer the most if the liens are not removed.

Factors #3 and #4

Item #3 either deals with third parties to the proceeding (there are none) or whether McClure will be substantially injured by a stay. As discussed above, McClure will suffer potentially devastating injuries if she cannot access the equity in some of her properties. These properties were obtained for her by Litt as her attorney so as to compensate McClure for the injuries caused her by the City of Long Beach in or before 1992. McClure would suffer a double injury by losing the fruits of that litigation.

As to the public interest (item #4), there is a definite public interest in freeing up property from vastly excessive liens, which put a chill on the use of that property by the owner. While this is true in this case and the ultimate appellate decision may have a strong impact on other involuntary liens, it is not a critical issue to the decision as to the stay pending appeal.

A Final Thought

Mr. Schulman is an excellent and persuasive attorney, who is giving excellent representation to his client.  His arguments appear very reasonable on the surface and his style is conciliatory and respectful to Ms. McClure and her counsel.  These are both effective and appreciated by the Court.

However, one must delve below these to find the true situation that exists.  Mr. Schulman pointed out that of the 600+ entries on the docket in the 2012 case, this is the only motion initiated by Litt.  While that appears to be true, a great many of the motions were opposed by Litt.  A brief review of the docket shows that Schulman filed no fewer than 38 opppositions/replies/responses in this case.  Further, saying "no," is the most powerful and controlling action that someone can take.  And Litt has consistently said "no" to proposals by McClure that would release any of his equity in an effort to allow her to reorganize.

Mr. Schulman also argues that the liens were allowed to remain on all the properties and that all he seeks is to continue the status quo.  But things have changed.  The stay pending appeal of his judgment is completed.  The Debtor is in a position to move this case forward and has a deadline to do so.  The real estate market is recovering or has recovered from the 2008 downturn.

///

///

///

///

Title to these properties is now 100% in the Debtor – having done some property exchanges to remove her son from any interest in some of the properties. To stay this pending appeal is unwarranted.

For the above reasons, the Motion for Stay Pending Appeal is denied.

###

Date: April 14, 2015

Geraldine Mund
United States Bankruptcy Judge