FILED & ENTERED

OCT 18 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

|  |  |
|---|---|
| In re:<br><br>Shirley Foose McClure<br><br><br><br><br><br>Debtor(s). | Case No.: 1:13-bk-10386-GM<br><br>CHAPTER 11<br><br>**PRE-HEARING TENTATIVE RULING ON OBJECTIONS TO AMENDED AND TO SECOND AMENDED SCHEDULE C**<br><br>Date:        October 22, 2019<br>Time:        10:00 AM<br>Courtroom:  302 |

The following was provided by email to the interested parties.  It is prepared prior to the hearing and may be modified at the time of the final ruling.

McClure claim of exemption

On August 2, 2019, Shirley McClure (McClure or Debtor) filed an amended Schedule C claiming as fully exempt the McClure v. Litt and McClure v. Tidus litigations which were included in her petition and schedules on Schedule B, item 21, each originally for an unknown amount. (dkt. 1, p. 20; dkt. 1677).  In each matter she asserts an exemption under CCP Section 703.104(E) that the claim is for lost future earnings needed for personal support.  She also asserts and that each claim is deemed "so personal" that it is not owned by the Estate.  She states that

each item has a value of $0. The Trustee and Barrett Litt have each filed an opposition to the amended claims of exemption.

On October 3, 2019, McClure filed a Second Amended Schedule C, claiming the same items as exempt with a value of "TBD" and specifying that the emotional distress items would be 100% of the amount of recovery while the future income ones would be exempt in the amount that the court rules.

The initial objections were to the August 2 filing. After McClure filed her reply to those objections, Litt and the Trustee filed their responses, which also dealt with the content of the Second Amended Schedule C.

Litt's Objection (dkt. 1694)

Litt sets out the chronology concerning McClure's state court case, the settlement, the appeal, etc.  He notes that even as late as April 22, 2019 – in her Statement of Issues on Appeal – McClure did not mention any claim of exemption of any part of the Litt State Court Case and did not assert that it was not property of the estate. (dkt. 1651).

The Litt matters are over.  Litt was paid the settlement amount, the State Court case was dismissed, the pending bankruptcy appeals were dismissed, Litt has been release by the Trustee from all claims (dkt. 1344), and Litt gave the Trustee a satisfaction of judgment.  Only after all of these occurred did McClure file this claim of exemption.

Litt has standing to object since he has an interest because two of the exemptions concern the McClure v. Litt state court case in which Litt is a defendant.  McClure's portion of the state court case was dismissed with prejudice.  Even if she procedurally could claim an exemption, that does not mean that she is entitled to it.  *In re Wolfberg*, 255 BR 879, 883 (9th Cir. BAP 2000).  Litt expresses no opinion on whether McClrue has any interest in the proceeds of the settlement that are held by the Trustee.

All legal and equitable interests of the debtor become property of the estate at the time that the case is filed.

McClure is judicially estopped from asserting that Litt's judgment liens should be removed from the properties to which they attached.  From the beginning, in her schedules she claimed that the malpractice claims were property of her bankruptcy estate.  These statements under penalty of perjury may be treated as judicial admissions and have a preclusive effect if the court relied on those schedules.  *In re Bohrer*, 266 B.R. 200, 261 (Bankr. C.D.Cal. 2001); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001).  Throughout, McClure has spent estate assets and asked to approve retention of litigation counsel at the expense of the estate with no mention that any portion of the Litt state court case is exempt.  In the three disclosure statements, she never claimed that any part is exempt or not property of the estate. She is now precluded from making that claim.  *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

The three factors in judicial estoppel are

(1) A party's later position must be "clearly inconsistent" with its earlier position,

(2) Whether the party has succeed in persuading a court to accept that party's earlier position, and

(3) The party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment if not estopped.

*Hamilton*, 270 F.3d at 782.

Here she took inconsistent positions in her schedules and only claimed that it was not property of the estate after the Court had approved the settlement.  The Court accepted all of the claims as property of the estate when it approved the settlement.  McClure did not act otherwise. Further, it would impose an unfair advantage on McClure and an unfair detriment on Litt and the Trustee if she can now assert that these claims are not property of the estate.  Litt and the Trustee will not receive the benefit of their bargain – Litt released $800,000 of his collateral and the Trustee paid Litt $340,000 and dismissed McClure v. Litt with prejudice.

McClure has waived these exemption claims.  Approving the Litt settlement was a lengthy process  and McClure never asserted any exempt interest in the claims in that lawsuit. Had she asserted them and the Court agreed, Litt would have had a different calculation as to the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

terms of the settlement.  Had the Court not agreed, McClure should have filed a timely motion to reconsider and then a timely appeal.  This did not happen.  "A waiver occurs when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Salyers v. Metro. Life Ins. Co.,* 871 F.3d 934, 938 (9ᵗʰ Cir. 2017),  Thus a waiver occurred due to the lack of action by McClure.

Trustee's Objection (dkt. 1696)

[*The Trustee's objection includes much of what is laid out in the Litt's objection.  The Court will not repeat these sections.*]

First the Trustee notes that there is no CCP Section 703.140(E) and therefore the Debtor must be referring to CCP §703.140(b)(11)(E), which is for a "payment in compensation for loss of future earnings of the debtor … to the extent reasonably necessary for the support of the debtor."

Then after pointing out the documents referred to above, the Trustee lays out the context of the timing of this Amended Schedule C in relation to the two state court actions.  The Litt Action has a final settlement Order and the settlement has been fully consummated.  The Tidus case was settled, but that was not approved by the Court.  The Trustee asserts that this belated Amended Schedule C is less to assert valid claims and more to subvert the settlements.

Specifically, the claim of "so personal" is vague and fails to place the Trustee on notice as to what property she is claiming as exempt.  Although McClure has previously stated that her emotional distress claims can only be asserted by her, that does not cure this vague description.  No emotional distress claim is contained in either the Tidus or Litt actions (although there was one in the Litt amended complaint, but that was struck by the state court).  If these claims exist, they are property of the estate and do not fall within the scope of exemption for tort claims under CCP §703.140(b)(11)(D), which is limited to personal bodily injury of the debtor.

Except for wrongful imprisonment, a claim for damages for emotional distress is not available to a plaintiff in a legal malpractice case. *Merenda v. Superior Court* (1992) 3 Cal.App.4th 1.  Therefore there is no claim for emotional distress that can be asserted.

Because the Debtor acknowledged in her Schedule B that her state court litigation claims are property of the estate, she is bound by that.  The proposed amendment does not change this. This is an evidentiary admission. *Suter v. Goedert*, 396 B.R. 535 (D.Nev. 2008).  Property of the estate is so broad that it even includes pre-petition and personal injury tort claims of the debtor, including claims for legal malpractice. *Suter* has a three-part test and Debtor does not meet any of these.  (1) The claims are not "intimately" personal to her and they are indistinguishable in kind from any other claims for legal malpractice. (2) the defendants have not sought to keep the claims against them from public scrutiny. (3) There is nothing in the assertion for compensation that makes them more personal than other claims for compensation due to legal malpractice.

The burden is on McClure to show that her claims meet an exclusion to property of the estate.  She has not adequately identified property that she alleges is exempt and has failed to designate which statutory exemptions she is invoking.

As to the loss of future earnings, it must be shown that they are for future earnings and not for earnings that are related to the pre-petition period.  And they must be necessary for the support of the debtor.  McClure fails to identify what property she is claiming as exempt since neither state court action asserts loss of future earnings.

The wild card exemption is not available to her, since she has already claimed that.

The Trustee agrees with Litt that McClure is judicially estopped from asserting the exemptions at this time.  The Trustee has expended time, effort, and estate resources in reliance on the filed schedules.

McClure's Reply to the Litt and Trustee's Objections (dkt. 1694)

McClure filed two reply briefs -one as to the Tidus Parties (dkt. 1721) and the other as to the Litt Parties (dkt. 1722).

**As to Tidus** - This reply focuses on McClure's "so personal claims" for the Intentional Infliction of Emotional Distress, Intentional Breach of Fiduciary Duty, and Punitive Damages ("IIED Claims.")[1]  These are non-economic, non-assignable, and non-transferrable under California Public Policy and California caselaw in the Tidus Case.  This is not a collateral attack or a relitigation of the claims that the Trustee might have.  They deal with a cover-up by the Tidus Defendants of their actions in 2009 and lies and fabrications that misled the Debtor into believing that the bankruptcy court was not going to rule on the Litt Fee Motion, but that it would be stayed in the bankruptcy court and litigated in the state court.  Once the bankruptcy court made the August 2009 fee award to Litt, the Tidus defendants intensified their coverup "and worse."  The evidence finally came to her in the voluminous email discovery from the Baute defendants in 2017.

McClure will move to amend the complaint in the Tidus case to add a claim for IIED.  She believes that these would be personal and not assignable or transferrable by the Estate. [She references and incorporates her reply/opposition in the Litt settlement.]

As to future income, the Tidus defendants have recognized that she experienced a loss of future income and they filed a motion in limine in the Tidus Case to preclude reference to loss of income damages allegedly caused by the defendants (a copy of that motion is attached as exhibit A to McClure's reply).  She also attaches a declaration of her financial and physical condition.

**As to Litt** – although the amended complaint was struck in state court due to a procedural failure by the Tidus firm, Judge Bendix did so without prejudice and then stayed the case.  McClure has never had a chance to litigate these issues in state court. She has consistently stated that she still had personal IIED claims against Litt, including in her prima facie case papers filed in summer 2018 in this court.  These are incorporated in her reply.  At the final hearing on the Litt settlement, McClure was very vocal as to her "so personal" claims and the Court gave Litt the chance to withdraw the settlement, but he did not.  The Trustee has settled the economic claims that he pursued and McClure deserves the right to pursue her "so personal" claims against Litt.

---

[1] The Court usually identifies these as claims for emotional distress, but intends no distinction when it uses the IIED designation.

McClure is awaiting guidance from the bankruptcy court as to when she can file her motion to amend the Litt-Trustee Settlement Order to clarify that the Trustee's settlement is for the economic claims and not the non-economic claims for the Debtor's so personal IIED claims which are not transferrable or assignable and belong to the Debtor.  She can then go into state court and have her IIED claims restored against Litt.  The Litt-Trustee Settlement now reads that the Trustee settled all economic and non-economic claims, including those in the October 6, 2009 First Amended Complaint.  They did not disclose to the superior court that the Debtor still has non-assignable, non-transferrable claims that the Trustee could not settle, sell or give away.

Litt's actions causes severe emotional distress to McClure.  Under California law, intentional infliction of emotional distress requires five elements: (1) extreme and outrageous conduct by the defendant; (2) such conduct was intended or done in reckless disregard of the probability of severe emotional distress; (3) the plaintiff suffered severe emotional damage; (4) the plaintiff's severe emotional distress was caused by the defendant's conduct; and (5) the defendant's conduct was unprivileged. *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982).

This is different from negligent infliction of emotional distress.  Intentional infliction is based on outrageous conduct, which is intentional or reckless and which is outside the bounds of decency.  It must be especially calculated to cause mental distress and does cause a very serious kind of mental distress.  *Ochoa v. Superior Court*, 39 Cal.3d 159, 165 fn. 5 (1985).

McClure has suffered a set of medical issues due to the unrelenting stress.  These are described in the reply.  She is also no longer able to support herself.

Purely personal claims are not assignable.  *Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937 (1976)  A bankruptcy trustee does not have the power to transfer, sell, or assign purely personal claims of the debtor. *Dorroh v. Deerbrook Ins.* No. 13-15316 612 Fed. Appx. 424 (9th Cir. 2015), analyzing California law.

*Sierra Switchboard Co. v. Westinghouse Elec,* 789 F.2d 705 (9th Cir. 1986) does not apply since that case did not involve IIED claims or the California prohibition against assignability.  In that case Debtor Fehl was the co-owner and manager of Sierra Switchboard and

Sierra Switchboard had a commercial relationship with Westinghouse. Fehl cited no public policy rationale and the Ninth Circuit did not decide whether, in some circumstance, emotional distress "could be so personal to the debtor that it would be undesirable, on public policy grounds, to transfer the property interest to the bankruptcy trustee." The McClure situation is different – it is not a negligent emotional distress claim, but it is an intentional one done by a person with a fiduciary duty to his client.

*Suter* also has very different facts since the claimants were not the direct victim of the emotional distress claim – it was their daughter. But that case cited three related reasons that a claim might be so personal as to be excluded from the bankruptcy estate. All three apply here:

(1) This would serve as a catharsis for the Debtor

(2) It would be unfair to allow the defendant to "buy" his own wrong and keep it from public scrutiny and

(3) Compensation for personal injury claims are intended to make a plaintiff whole and not merely to pay off debt. *Suter v. Goedert*, 396 B.R. 535, 546 (D. Nev. 2008).

**As to the Schedule C exemption** - originally McClure and her attorney thought that the Litt litigation would take place in state court and that this was a surplus estate. Circumstances have dramatically changed since then. McClure did not hide her IIED claims or submit her exemptions in bad faith. From Reitman's appointment as trustee in July 2016, he indicated that he would not litigate the Litt state court case, but would settle it. Throughout, the Debtor has fought for the right to litigate this case.

The Second Amended Schedule C is to handle claims that are no longer valid. Also there are some clarifications due to later actions:

The $125,000 retainer deposit to Greenberg and Bass should be refunded to the Debtor from the estate, which is ultimately responsible for the payment of the estate's legal fees.

The $1,600 in a joint bank account with Jeff McClure was seized by the Trustee and should be returned to the Debtor as exempt.

The Trustee sold miscellaneous items that were 50% exempt to Debtor and in which Jason McClure had an interest. This exemption is now moot.

McClure now needs help with the expenses of her daily living. In August 2016, the Trustee took away her property management job and she is not physically able to support herself. She is 77 years old and this will only get worse.  McClure than details her work history and the actions that led up to the Long Beach litigation.  The properties that she purchased from the proceeds of that settlement created her retirement plan.  Debtor is not seeking all of the economic damage recovery, but is seeking only funds to enable her to pay for her living, medical and care assistance.  "The $800,000 reduction in the Trustee-Litt settlement is for economic claims and represents compensation for future earnings and includes loss of the Debtor's retirement funds." Her "so personal" claims are for her IIED claims for the non-economic claims for severe emotional distress and physical disability due to the severe distress.

Under FRBP 1009(a), a schedule may be amended by the debtor as a matter of course at any time before the case is closed.  This applies to claims of exemptions.  *Martinson v. Michael (In re Michael)*, 163 F.2d 526 (9th Cir. 1998); *Tyner v. Nicholson (In re Nicholson*, 435 B.R. 622 (9th Cir. BAP 2010).  Exemptions are to be construed liberally in favor of the debtor and in light of the purposes of the exemption.  Although initially all property goes into the estate, the debtor can then exempt property.  Listing the Litt malpractice case is consistent with all property initially going into the estate and does not mean that it cannot be exempted later on.

In this exemption, McClure is seeking from the estate settlement proceeds the amount that is reasonably necessary to support her with the basic necessities and to prevent her from being a public charge.  The court is to look at the debtor's present circumstance, other exempt property, her present income, and any other factors indicating what is truly necessary to her basic needs.

Litt's Reply to Mcclure's Reply to Litt and Trustee's Objections to Amended Schedule C (dkt. 1725)

The Litt settlement motion was filed 594 days ago and this went on for months during which McClure had adequate time to assert "whatever she thought helpful in opposition to the settlement."  She also brought a motion to reconsider and her appeal was untimely and

dismissed.  The order approving the settlement simply stated that "the motion is hereby granted."
Litt paid $800,000 for this settlement.

As a result of the settlement, the Trustee dismissed with prejudice McClure's claims in
the superior court.  Releases have been exchanged with the Trustee, releasing all claims that
were made or could have been made in the Litt State Court Case.

Now she is seeking permission to file a motion to amend the Court's order approving the
settlement and to amend the settlement itself to provide that the settlement does not include all
claims against Litt.  This is essentially another motion to reconsider.

Because McClure filed a Second Amended Schedule C, the disputes on the original ones
are moot.  Litt will file an objection to the Second Amended Schedule C within the applicable
time.

It appears that McClure has dropped her claim that a portion of the lawsuit never became
property of the estate.  Also, she now asserts that the real property that she bought was her
"retirement plan," but none of her schedules assert such a thing.  As to her assertion that she is
entitled to funds reasonably necessary for support and that this should come from the Litt
settlement monies, Litt has no interest in these and does not respond to this assertion.

Everyone knew of McClure's IIED claims as early as 2009, but the first time that she
asserted that they were not part of the estate was at the March 26, 2019 hearing on the untimely
motion to reconsider.  The claim of exemption was not filed until August.

Concerning the Amended and Second Amended Schedule C, there is no clarity as to what
McClure is claiming, but it seems to fall under CCP §703.140(b)(11)(D), which is limited to
personal bodily injury in an amount of up to $24,060.

As to her assertion that her claims could not be transferred, they were not transferred or
assigned.  This was the settlement of what McClure conceded was property of the estate.  She
took every action open (though some were late) and on her statement of issues on appeal there
were no issues that reflected any claim of exemption or any claim that any portion of the settled
case was not property of the estate or exempt.

<u>The Trustee's Reply to McClure's Response to Objection to Exemption Claims (dkt. 1726, 1727)</u>

McClure is claiming lost future earnings needed for personal support under "CCP §703.140(E)" *sic*. In her Tidus Response she identifies these future earnings as loss of income from her properties caused by the recording of the Litt Judgment Lien.  This is not factually correct since it was not the lien that interfered with her right to receive income from these properties and, in fact, she continued to receive income throughout her tenure as debtor-in-possession.  Further, she characterizes this as her "retirement fund," which does not qualify as an income stream, which is defined as a "payment under a stock bonus, pension, profit-sharing, annuity, or similar plan." CCP §703.140(b)(10)(E).

Claims for emotional distress cannot be assigned to third parties under California law, but they are still property of the estate.  *Sierra Switchboard,* 789 F.2d at 709. In *Dorroh v. Deerbrook Ins. Co.*, 612 Fed.Apps. 424 (9th Cir. 2015), the Ninth Circuit held that a trustee could not assign to a third party a claim for emotional distress and punitive damages of a debtor, with the result that such claims would remain in the bankruptcy estate.

The Debtor's reliance on *Suter v. Goedert* is not persuasive. *Suter* was based on a footnote in *Sierra Switchboard* in which the Ninth Circuit declined to decide "whether emotional distress might in some circumstances be so personal to the debtor that it would be undesirable, on public policy grounds, to transfer the property interest to the bankruptcy trustee." *Id.*, 789 F.2d at 709, n.3.  There have not been any reported cases since 1986 that held that emotional distress claims should be excluded from the estate because they were "personal" to the debtor. The text of §541 is very broad and is meant to include personal injury claims as property of the estate.  *In re Brooks*, 12 B.R. 22 (Bankr. S.D. Ohio 1981).  In fact, these personal injury tort claims are really claims for legal malpractice and should not be excluded from the estate based on subjective emotions.

The Debtor is estopped from these amended claims of exemption, not because the claims were unknown to all parties, but because the Trustee acted in justifiable reliance on her original Schedule C.

As to the Second Amended Schedule C, it is indistinguishable from the First Amended

Schedule C and the Trustee asks the Court to rule on it at this time.  In dealing with specific

issues raised in the Second Amended Schedule C:

(1) Wells Fargo account no. 4094 – the $1,662 in social security payments were turned over to

    the Debtor in August 2016 (dkt. 1146, p. 7)

(2) $125,000 retainer paid to Greenberg & Bass – the retainer was paid from property in which

    the Debtor and her estate had an interest, but she only claimed $16,750 as exempt.

(3) Property owned by Jason McClure and used in Debtor's rental properties  - Debtor cannot

    claim an exemption in someone else's property.  As to that identified as Jason's, each time

    the Trustee agreed to turn it over to him subject only to him providing evidence of ownership

    and a declaration under penalty of perjury.  However he never provided these documents.


<u>ANALYSIS</u>

Generally McClure would have set out her theories in the initial motion, but in this case

both of her amended claims of exemptions were skeletal (which was correct procedure) and so it

is only through her Reply that the Court and other parties can ascertain her reasoning and the

scope of the exemption that she is seeking.

Ms. McClure has selected to claim exemptions under 11 USC §522(b)(3), so her

exemptions are as allowed under California law for a bankruptcy case.  On August 1, 2019 she

filed a First Amended Schedule C and on October 3, 2019 she filed a Second Amended Schedule

C.  Although Litt wants the right to address the Second Amended Schedule C at a later time, the

Trustee is correct that the two are not sufficiently different that they need a separate set of

objections.  Further, Litt argues that the October 3 filing moots the earlier amendment, but he

still sets forth in detail his issues as to the concept that McClure cannot claim any exemption or

personal interest in the Litt State Court Case.  Therefore, this memorandum applies to both

amended claims of exemption.

It is unclear exactly what McClure is seeking with this second amended claim of

exemption.  As to Litt, it seems that she may be asking that the Trustee turn over as much of the

settlement proceeds as is necessary to provide for her minimal level of support.  But it also

appears that she is seeking a determination that the Trustee could not settle the entire Litt State

Court Case and that she has the right to go to the superior court and move to reopen that case (or

set aside the dismissal) as to the limited issue of emotional distress [knowing that she would have

to file a motion to somehow bring the emotional distress issue before that court since it was not

included in the operative complaint which was settled and dismissed].  It is also not completely

clear whether she is asserting that the IIED claims are not property of the estate or whether they

are property of the estate, but are exempt.

        As to Tidus, which is still open and has not yet had an approved settlement, she wishes to

pursue the emotional distress claim on her own behalf and exempt any proceeds thereof.

        These raise various issues:  (1) is a claim for emotional distress property of the estate

under 11 USC §541 or does it belong solely to the Debtor? (2) if the claim for emotional distress

is property of the estate, is it too late for her to amend her Schedule C to add either or both state

court cases to it? (3) if she can amend her Schedule C at this point in time, can a claim for

emotional distress ever qualify as exempt and, if so, under what standard?  (4) if a claim for

emotional distress can be exempt – whether under the "so personal" standard or some other

standard – does McClure's claim against Litt and/or her claim against Tidus meet that or those

standards?  (5) if she can amend her Schedule C at this point in time, is she allowed to seek the

amount needed for future living expenses from the Litt settlement proceeds or from other

property of the estate?


THE CLAIMS FOR EMOTIONAL DISTRESS ARE PROPERTY OF THE ESTATE

        In Litt's reply brief, he asserts that although McClure originally claimed that her IIED

claims are not property of the estate, she has dropped that assertion and now merely seeks to

exempt them.  In reviewing the papers, it is not completely clear that McClure has limited this to

exemptions, so the issue of property of the estate is included in this analysis.

        Except in exceptional circumstances, claims for emotional distress are property of the

estate under 11 USC §541 and belong to the trustee. In *Sierra Switchboard,* the Ninth Circuit

1    ruled that an emotional distress claim was property of the estate, although they left room for a

2    highly personal claim to remain with the debtor:

3

4         We need not decide whether emotional distress might in some circumstances be so
          personal to the debtor that it would be undesirable, on public policy grounds, to transfer
5         the property interest to the bankruptcy trustee. *See In re Brooks*, 12 B.R. 22, 24–25
          (S.D.Ohio 1981) (debtor cited no public policy reason why Congress could not expand
6         definition of property to include personal injury claim). In the circumstances of this case,
          we perceive no persuasive public policy rationale.

7    789 F.2d at 709 n. 3.  Many years later, in the *Suter* case, the Nevada District Court provided

8    some guidance in determining whether a claim is sufficiently "personal," although discussing

9    this in the context of legal malpractice and not emotional distress:

10

11        *Sierra Switchboard* provides only limited guidance in determining whether a claim is so
          personal to the debtor that it should be excluded from the bankruptcy estate. The parties
12        did not cite, nor have we discovered, any authority to support the idea that a legal
          malpractice claim is so personal that it would not become part of the bankruptcy estate.
13        The Court can envision three related reasons for finding an action to be so personal as to
          exclude it from the bankruptcy estate: (1) permitting the debtor to prosecute intimately
14        personal claims serves as a type of catharsis for the debtor; (2) it seems unfair to allow a
          defendant to "buy" his or her own wrong and to keep it from public scrutiny; and (3)
15        compensation for personal injury claims are intended to make a plaintiff whole, not
          merely to pay off a debt.
16
          Each of these reasons stems from righting a wrong done to a plaintiff herself. As the
17        court wrote in *Sierra Switchboard*, the claim must be "personal," that is, it must belong to
          the plaintiff.[2]

18   *Suter v. Goedert*, 396 B.R. 535, 546 (D. Nev. 2008).[3]

19        I did not find any cases excluding an emotional distress claim from the estate under the

20   *Suter* test. The Bankruptcy Appellate Panel has discussed the *Suter* test noting that "[a]fter *Sierra*

21   *Switchboard Co*. was decided and after twenty-four subsequent years of decisions interpreting §

22   541, no court has determined that personal injury claims are not property of the estate under §

23   541."  *In re Flores*, 2010 WL 6259989, at *6 (B.A.P. 9th Cir. Apr. 6, 2010).

24        In considering what types of claims for emotional distress might be so highly personal as

25   to be excluded from the estate, the Court has a hard time envisioning one that does not arise as

26

27   [2] As noted below, the problem that the plaintiffs faced in *Suter* was that the injury was to their
     daughter and not to themselves.

28

     [3] The *Suter* opinion is important since there are no other guidelines available, but it is not binding on this court.

damages from a claim of personal bodily injury (which is already exempt).  And there are no cases that give examples or guidance in this area.  The proposed first amended complaint in the Litt State Court Case (a copy of which is attached as exhibit A to McClure's reply (dkt. 1722)) lays out the scenario of the relationship that McClure asserts existed between her and Litt. Starting in paragraph 63 of the proposed first amended complaint, she describes the existence of a personal and professional relationship that appears to cross several lines of professional conduct and is, perhaps, a breach of fiduciary duty. Litt is accused of manipulating McClure so that she became emotionally dependent on him and of taking advantage of her possible PTSD from the actions of Long Beach.  But this does not arise to the level described in *Suter*.

Although it would certainly serve as a catharsis for McClure to be able to put before a trier of fact all of the wrongful acts that she contends Litt did to her, that seems to apply to every case when a plaintiff feels him/herself abused or wronged by another.  As to allowing Litt to "buy" his wrong and keep it from public scrutiny, that, too, applies to almost every tort and in this particular case McClure's contentions of wrongdoing are on the record and thus available to public scrutiny.  And as to Suter's contention that compensation for personal injury claims are intended to make a plaintiff whole and not merely to pay off debt, this is not applicable unless the amount received in the tort case would be exempt and thus protected from the plaintiff's creditors.

Legal malpractice just does not fall into this category nor does breach of contract or even most cases of willful and malicious injury.  Thus, the claims for emotional distress are property of the estate and not of Ms. McClure unless they are exempted from the estate (discussed below).

McClure argues that the claims in the state court actions are divisible: the Trustee owns and settled the economic ones and she still owns (or maybe the settlement did not encompass) the personal non-economic claims.  This is not the law.  The Trustee owned and settled all claims except those that McClure is able to exempt.

TIMING OF THE AMENDED CLAIM OF EXEMPTION

1

2

3

4

5

6

7

8

9

10

Fed.R.Bank.Proc. 1009(a) states that a "voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby." But this right to amend does not mean that the claim will ultimately be allowed on the merits. There is an unresolved dispute among various courts as to whether the amendment is subject to objection as to timing solely on the grounds that other parties relied on the debtor's stated position that the property in question was not exempt. *See, for example, In re Ballou*, 23 Fla. L. Weekly Fed. B 158, 2011 Bankr. LEXIS 3620 (Bankr. M.D. Fla. Sept. 13, 2011). There is also a question of whether the amendment can be made if the debtor acted in bad faith or concealed the asset. *Corcoran v. Publow*, 418 B.R. 231 (E.D. Mich. 2009).

11

12

13

14

15

16

17

Prior to 2014 the law of the Ninth Circuit was that the amendment may be disallowed if its timing is in bad faith or of prejudice to creditors. This is separate from the question of whether the exemption is allowable. *Martinson v. Michael (In re Michael)*, 163 F.3d 526 (9th Cir. 1998). But with the Supreme Court decision in *Law v. Siegel*, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) it appears that the Ninth Circuit was in error and that the only grounds for dispute are of the exemptions themselves and not the timing of the amended claim of exemption. *See, for example, In re Arellano*, 517 B.R. 228 (Bankr. S.D. CA 2014).

18

19

However, since the parties raised the issue of estoppel, the Court will set forth its determination of that issue.

20

21

NEITHER EQUITABLE ESTOPPEL NOR JUDICIAL ESTOPPEL APPLY

22

23

24

25

26

27

McClure has never given up on her claim for emotional distress and it was known to the parties throughout this bankruptcy proceeding. Although she failed to include it in her initial complaint in the Litt State Court Case, she did try to bring it into that action through an amended complaint.[4] But in 2009, the superior court denied the motion to file the amended complaint and stayed the action. Because the Litt State Court Case was stayed prepetition, the issue of emotional distress was not pending in that case when the Trustee and Litt settled McClure's

28

---

[4] The Trustee and Litt provided the Court with copies of the motions, etc. surrounding the Litt State Court Case. The proposed amended complaint is on the docket at 1:13-bk-10386, doc. 1389-3 and doc. 1722-1.

portion of that case.[5]  But in determining the motion to settle with Litt, this Court noted that emotional distress was still a potential issue and stated: "what remains in the Litt State Court Action are the potential questions of possible damages for malpractice as to attorney-client relations, intentional infliction of emotional distress, and malpractice as to bad tax planning advice."[6]

The issue of a claim for emotional distress was also raised in the McClure opposition to the Tidus settlement.[7]  In its ruling on that motion the Court stated the following, which was the impetus to McClure filing her Amended Schedule C:

> While the Tidus malpractice case is property of the estate, McClure asserts that she will seek to add a claim for emotional distress either in the Litt State Court Case or in the stayed part of the Tidus Case (which deals with Litt).  The Court does not know if this will be allowed for procedural or legal reasons.  And, thus, this litigation continues.  It has already eaten up assets of Litt and of the estate, and it has eaten up much of the life and emotions of McClure.
> The emotional distress claim may not be against the legal malpractice defendants (Tidus, et al), but against Litt.  And these may be highly personal.  But this is not an issue that the Court must resolve, though it would be wise to do so.  The estate can only sell what it owns.  If, in fact, the emotional distress claim is property of the estate, that will be part of the sale.  If not, it remains outside the sale and is in the hands of McClure to take whatever action is necessary to exempt it and proceed with it.  If it does not belong to the estate, how can the Trustee sell it?  Does the $100,000 cover everything else?  By failing to determine what is being sold/settled, the Court is only encouraging more litigation, more cost, more uncertainty.

Everyone agrees that McClure's claim for emotional distress was never hidden.  She let it simmer while we dealt with other issues, but raised it in the context of the settlement of the Litt State Court Case.  At the hearing on the motion to reconsider, McClure asserted that she had emotional distress claims and that she believed that they could not be transferred.  And the Court made it clear that the Trustee could only settle what the estate owns and that if the estate does not own the emotional distress claim, it was not part of the settlement.  I then asked Litt's attorney whether Litt wished to proceed with the settlement knowing that McClure would attempt to

---

[5] Jason McClure's portion of the Litt State Court Case is still pending and is not property of the estate.
[6] 1:13-bk-10386, doc. 1528, 18:5-7
[7] 1:13-bk-10386, doc. 1690, 23:1-15.  The Court denied the Trustee's motion to settle and that is now on appeal.

assert a claim against him for emotional distress.  He said that Litt did wish to proceed.[8]  Thus

neither Litt nor the Trustee suffered any damages due to the settlement order.

It should not be a shock that McClure – who is a qualified paralegal, but not a lawyer –

would file an amended claim of exemptions once this issue was again raised in the Tidus

settlement motion.  Litt knew that she had not relinquished her claim for emotional distress and

he could not rely on that.  He had a chance to terminate the settlement, but chose not to do so.

Concerning the lack of effective action by McClure after the settlement order was signed,

this also does not rise to the level of estoppel.  It actually benefits Litt since it seems that if the

IIED claims are exempt, McClure might be barred procedurally from pursuing them since

everything has become final.  However, estoppel does not apply.

As to the Tidus claims, the Trustee has not been pursuing this litigation and few assets of

the estate have been expended.  No settlement has been approved and the order denying it is on

appeal and creates at least a partial stay of further action by the Court.  Estoppel does not apply.

As to the argument concerning judicial estoppel, McClure has been clear throughout that

she has and intends to pursue claims for emotional distress.  She has spoken of amending the Litt

State Court Complaint when the stay is lifted.  While the Trustee may have ignored these

because they were not on her original Schedule C, they were raised in hearings and papers and

both the Trustee and Litt were aware of them.  The Court certainly did not rely on any

inconsistent position as is seen in the motion to reconsider.  Thus judicial estoppel does not

apply.

The objections are not merely to the act of filing the amended claims of exemptions, but

also to the exemptions themselves. The Court is aware that normally the burden to overcome an

exemption rests on the objecting party and approaches it in this fashion.  However, the Court is

also aware that there are probable procedural boundaries due to the finality of the dismissal of

the Litt State Court Case as to McClure and of the Order approving the Litt-Trustee settlement.

---

[8] Hearing on March 26, 2019,  1:13-bk-10386, doc. 1619, p. 15, et seq.

THE OBJECTION TO THE CLAIM OF EXEMPTION FOR EMOTIONAL DISTRESS IS
SUSTAINED

As set forth above, the claims for emotional distress are property of the estate.  Thus, the
Court needs to look at whether they fall under any category of exemption.  CCP
§703.140(b)(11)(D) exempts a "payment, not to exceed $26,800 on account of personal bodily
injury of the debtor or an individual of whom the debtor is a dependent." Had the legislature
intended to include a claim for mental or emotional injury, it would have so stated.  There is no
other provision available to McClure as to her claims for emotional distress.  Thus, the claims for
emotional distress are not exempt in either the Tidus case or in the Litt case.


THE OBJECTION TO THE CLAIM OF EXEMPTION FOR LOSS OF FUTURE INCOME IS
SUSTAINED

As to a loss of future income, both the claims against Litt and those against Tidus
occurred pre-petition and thus are property of the estate.  However, they could be exempt if they
qualify under California Law.

> Cal.Code.Civ.Proc. §703.140(b)(11(E) provides that the following is exempt:
> (11) The debtor's right to receive, or property that is traceable to, any of the following:
>  (E) A payment in compensation of loss of future earnings of the debtor or an individual
> of whom the debtor is or was a dependent, to the extent reasonably necessary for the
> support of the debtor and any dependent of the debtor.

In her complaint in the Tidus Case, McClure requested damages for "loss of income on
Plaintiffs' properties because of abstracts of judgment placed on the properties by Litt with
respect to the supplemental attorneys' fees award." [quoted in Tidus motion in limine, Ex. A to
McClure Reply filed 10/3/19, dkt. 1721 ]  The issue here is what is meant by the phrase "loss of
future earnings of the debtor…".   Clearly this does not include all future income or assets or the
growth of present assets in the future.  While all "earnings" would be included in "income," not
all "income" is included in "earnings.

Ballentine's Law Dictionary (3d edition) defines "future earnings" as "[w]ages, salaries,
or the net income from an occupation, profession, or business to be earned or accrue later."

Black's Law Dictionary (11th ed, 2019) includes "future earnings" as a subset of "lost earnings," which is defined as "[w]ages, salary, or other income that a person could have earned if he or she had not lost a job, suffered a disabling injury, or died.  Lost earnings are typically awarded as damages in personal-injury and wrongful-termination cases. There can be past lost earnings and future lost earnings. Both are subsets of this category, though legal writers sometimes loosely use future earnings as a synonym for lost earnings."

Only a few courts have focused on the issue of whether all income constitute earnings. In *In re Morley*, 2013 Bankr. LEXIS 539 (Bankr. MT 2013) the issue was a claim of exemption in accounts receivable that the debtor collected post-petition and claimed exempt under Montana's earnings exemption.  Montana Code Section 25-13-614 exempts earnings of a judgment debtor and specifies that "the definition of earnings, disposable earnings, and garnishment are as set forth in 15 U.S.C.1672."  15 U.S.C. § 1672 states as follows:


> For the purposes of this title [15 USCS §§ 1671 et seq.]: (a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

The issue arose in *In re Rosetman*, 405 B.R. 336 (Bankr. AZ 2009) whether monies received from real estate commissions are exempt under Arizona law as "disposable earnings." Arizona exemption law A.R.S. § 33-1131 defines "disposable earnings" as

> that remaining portion of a debtor's wages, salary or compensation for his personal services, including bonuses and commissions, or otherwise, and includes payments pursuant to a pension or retirement program or deferred compensation plan, after deducting from such earnings those amounts required by law to be withheld.

The court ruled that because the Arizona statute specifically includes "commissions," such monies are exempt even though they are not wages earned by an employee.

The Internal Revenue Code excludes "foreign earned income" from gross income and defines this as "…earned income attributable to services performed by such individual …."  26 USC §911(b)(1)(A).

The opposition argues that the existence of Litt's lien is not the cause of her loss of earnings.  In fact, from well before 2009 (when the Litt abstract of judgment was issued[9]) until

---

[9]  1:92-bk-13717, doc. 154

2016, when the Trustee was appointed, McClure was paid a salary for her work as the property

manager.  It was only when she was replaced by a trustee that her earnings terminated.  "Future

earnings" does not include future appreciation of assets of the estate.  What McClure really lost –

partially due to the Litt lien, partially from the economic downturn of the "great recession," and

partially from management decisions that she made – was the property itself and its increased

value in today's market.  This is not a loss of future earnings.


THE OBJECTION TO THE CLAIM FOR THE AMOUNT NECESSARY FOR FUTURE

SUPPORT [RETIREMENT FUND] IS SUSTAINED

McClure asserts that she looked to the real property that she purchased with the Long

Beach Settlement Proceeds as her retirement fund and thus she should receive sufficient monies

from the estate (or from the Litt settlement) to provide her with a minimum level of future

support.  The exemption for this type of claim is set forth in CCP §703.140(b)(10)(E):


> (E) A payment under a stock bonus, pension, profit sharing, annuity, or similar
> plan or contract on account of illness, disability, death, age, or length of service, to the
> extent reasonably necessary for the support of the debtor and any dependent of the
> debtor, unless all of the following apply:
> (i) That plan or contract was established by or under the auspices of an insider that
> employed the debtor at the time the debtor's rights under the plan or contract arose.
> (ii) The payment is on account of age or length of service.
> (iii) That plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or
> 408A of the Internal Revenue Code of 1986.

.

Although the owner of many small and even large businesses would like to claim the

assets of the business or the future growth of the business as their retirement plan – and in

actuality that is what they hoped and wanted them to be – the California exemptions require that

there be an actual plan or contract.  The assets or funds must be used to save for retirement and

cannot be the source of ongoing income to the debtor.  Throughout this case McClure has never

contended that the real properties or their proceeds were set aside for her retirement.  In fact she

distributed the proceeds to herself through a management fee and there is no writing establishing

a retirement account and stating the terms thereof.

1    <u>THE OBJECTION TO THE CLAIM FOR RETURN OF PERSONAL PROPERTY HELD BY</u>

2    <u>THE TRUSTEE NEEDS CLARIFICATION</u>

3         The Trustee has proffered evidence that each of the items of personal property were

4    already returned or that Jason did not provide the necessary documentation to claim his property.

5         Wells Fargo account no. 4094 – The Trustee says that the $1,662 in social security

6    payments were turned over to the Debtor in August 2016 (dkt. 1146, p. 7).  However, that

7    document only shows the receipt of the $1,662.  Please clarify where it shows that it was

8    disbursed to Ms. McClure.

9         $125,000 retainer paid to Greenberg & Bass – the retainer was paid from property in

10   which the Debtor and her estate had an interest, but she only claimed $16,750 as exempt.  Does

11   the Trustee object to this exemption?  Is there any reason that the estate should hold the $16,750?

12        Property owned by Jason McClure and used in Debtor's rental properties  - Debtor cannot

13   claim an exemption in someone else's property.  As to that identified as Jason's, there is

14   documentation that shows that Jason never followed through to claim the property.  The Trustee

15   acted correctly.  Therefore this objection to claim is sustained.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1  <u>MCCLURE'S REQUEST FOR GUIDANCE AS TO WHEN SHE CAN FILE HER MOTION</u>

2  <u>TO AMEND THE LITT-TRUSTEE SETTLEMENT ORDER AND TO PROCEED IN STATE</u>

3  <u>COURT</u>

4        The Litt-Trustee Settlement Order is short and merely approves the settlement of all

5  claims owned by the estate against Litt.  If the Court were to rule that McClure still owned

6  certain claims against Litt (by exemption or in that they are not property of the estate), it would

7  allow a clarification of the Settlement Order.  However, given this ruling, there is no reason to

8  revise or amend the Settlement Order.

9
                                    ###
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
       Date: October 18, 2019
25                                              _____
                                                Geraldine Mund
26                                              United States Bankruptcy Judge

27

28